UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BILLY JOE COLEMAN,

                Plaintiff,

v.                                          5:14-CV-1139
                                                          (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                     OF COUNSEL:

OLINSKY LAW GROUP                      HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.         JOSHUA L. KERSHNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 23.) This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Billy Joe Coleman ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 14, 22.) For the reasons set forth below, it is recommended that Plaintiff's motion seeking remand be granted and Defendant's motion be denied.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on May 8, 1962. (T. 151.) He completed the seventh grade. (T. 178.) Generally, Plaintiff's alleged disability consists of diabetes, arthritis, high blood pressure, depression, and low back pain. (T. 177.) His alleged disability onset date is September 18, 2009. (T. 151.) His date last insured is March 31, 2015. (T. 173.) He previously worked in maintenance and as a laborer. (T. 178.)

   B.   **Procedural History**

On December 8, 2011, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 63.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 16, 2013, Plaintiff appeared before the ALJ, Hortensia Haaversen. (T. 29-56.) On January 31, 2014, ALJ Haaversen issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-28.) On July 22, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 13-23.) First, the ALJ found that Plaintiff met the insured status requirements through March 31, 2015 and Plaintiff had not engaged in substantial gainful activity since September 18, 2009. (T. 13.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease, hypertension, diabetes mellitus, and affective disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 14-17.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform: medium work; however, Plaintiff could occasionally bend, and occasionally climb ladders, ropes, and scaffolds. (T. 17.)[1] The ALJ further determined Plaintiff could perform simple routine tasks in a low stress environment and make occasional decisions and work related judgments. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 21.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the RFC determination was unsupported by substantial evidence; specifically, the ALJ erred in assessing the medical opinions in the record. (Dkt. No. 14 at 9-17 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

erred in her credibility assessment. (*Id.* at 17-19.) Third, and lastly, Plaintiff argues the ALJ erred in her step five determination. (*Id.* at 19.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly assigned weight to the opinions in the record. (Dkt. No. 22 at 6-14 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's credibility analysis was supported by substantial evidence. (*Id.* at 15-17.) Third, and lastly, Defendant argues the ALJ's step five determination was supported by substantial evidence. (*Id.* at 17-18.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

4

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner]

5

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Medical Opinion Evidence in the Record

Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. (Dkt. No. 14 at 9 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ erred in the weight afforded to Plaintiff's treating physician, Dr. Triana; and the ALJ engaged in "impermissible picking and choosing of portions" of the consultative examiner's opinion. (*Id.* at 9-17.) Defendant argues that the ALJ properly assigned weight to the opinions in the record. (Dkt. No. 22 at 6 [Def.'s Mem. of Law].)

i.) Treating Physician, Ted Triana, D.O.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

6

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff established care with Dr. Triana on March 2, 2010. (T. 338.) At that time Plaintiff presented with hypertension ("HTN"), diabetes mellitus ("DM"), and low back pain. (*Id.*) Dr. Triana treated Plaintiff on a regular and consistent basis, treatment notes in the record span March 2010 to December 2013. (T. 338, 428.) Dr. Triana completed two medical source statements dated April 23, 2012 (revised) and October 30, 2013. (T. 375-378, 392-395.) The limitations imposed in the two statements vary only slightly.

In April 2012, Dr. Triana opined Plaintiff could lift and carry less than ten pounds frequently and less than ten pounds occasionally. (T.375.) Dr. Triana opined Plaintiff could stand and/or walk a total of less than two hours in an eight hour workday. (*Id.*) Dr. Triana opined Plaintiff could sit for less than six hours in an eight hour workday. (T. 376.) Dr. Triana opined Plaintiff was limited in his ability to push and/or pull with his lower extremities. (*Id.*) Dr. Triana opined Plaintiff could frequently climb, balance, crouch, and crawl. (*Id.*) Dr. Triana opined Plaintiff could occasionally kneel and stoop. (*Id.*) Dr. Triana opined Plaintiff had no manipulative, visual, or communicative

7

limitations. (T. 377.) Dr. Triana stated his conclusions were supported by positive radiological tests. (T. 376.)

Dr. Triana's October 2013 medical source statement imposed the same exertional and non-exertional limitations as his April 2012 statement. However, in October 2013, Dr. Triana opined Plaintiff could frequently lift and/or carry twenty pound and occasionally lift and/or carry less than ten pounds. (T. 392.) Dr. Triana stated his conclusions were supported by positive radiological tests, positive clinical findings, and Plaintiff's limited response to medications. (T. 393.)

As for objective medical imaging, on March 31, 2011, Plaintiff had an MRI conducted of his lumbar spine. (T. 222.) Results indicated degenerative disc disease with annular bulging of the L2-3 and L5-S1 intervertebral discs without neural encroachment or impingement. (*Id.*) The MRI results indicated bulging disc at L3-4 which abutted the left L4 nerve root, but without obvious displacement and further clinical correlation for radiculopathy was recommended. (*Id.*) The MRI results also indicated mild central canal stenosis at L4-5 without impingement, and significant degenerative change of the lower lumbar fact joints. (*Id.*) Dr. Triana reviewed the MRI results on April 12, 2011. (T. 305.) In 2009 medical imaging showed Plaintiff had "mild degenerative changes" in his lumbar spine, but no fracture or subluxation. (T. 220.) The record does not contain any additional objective medical imaging of Plaintiff's spine.

The ALJ afforded Dr. Triana's medical opinions "little weight." (T. 21.) The ALJ reasoned Dr. Triana's opinions were "not supported by the majority of the objective medical evidence" and further, "[t]here was no objective medical evidence in the file around the time [his] opinion was given." (*Id.*)

8

First, as Plaintiff asserts, there is no requirement that a treating physician's opinion be supported by contemporaneous objective medical evidence. The Regulations state that a treating physician's opinion deserves controlling weight if the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Dr. Triana indicated he based his medical opinion, in part, on positive radiological tests. (T. 393.) Dr. Triana's notations do not indicate that further testing was ordered, or required, for Plaintiff's care. Further, the ALJ refers to the "majority of the objective medical evidence;" however, it is unclear from the ALJ's lack of analysis, what medical evidence she relied on.

In her decision, the ALJ discussed medical imaging in the record; however, the ALJ failed to provide a complete and accurate overview of the evidence. In her discussion of the March 2011 MRI results, the ALJ correctly stated the MRI demonstrated degenerative disc disease with annular bulging at L2-3 and L5-S1 without neural encroachment or impingement. (T. 19.) The ALJ also stated the MRI demonstrated mild central canal stenosis at L4-5 and degenerative changes of the lower lumber facet joints. (*Id.*) However, the ALJ failed to include the MRI findings that demonstrated bulging disc at L3-4 which abutted the left L4 nerve root, but without obvious displacement. (T. 222.) Even if the ALJ provided a full description of the MRI results and even if the ALJ indicated it was these results she relied on, she still commited legal error because she failed to provide any analysis indicating how this medical imaging was inconsistent with Dr. Triana's opinion.

In addition to the medical imaging, the ALJ cited to one examination conducted by Dr. Triana, in her discussion of medical evidence. (T. 19.)[2] As in her discussion of the MRI, the ALJ failed to provide a complete summary of the findings. The ALJ provided an overview of the objective medical findings, such as blood pressure, and also that Plaintiff experienced tenderness at his lumbar spine. (*Id.*) However, the ALJ failed to discuss Dr. Triana's observation that Plaintiff had limited forward and lateral flexion. (T. 399.) To be sure, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)). Here, the ALJ's reasoning for choosing this particular treatment record, and not others, was not clear. The ALJ's reasoning was further troublesome because the ALJ did not provide a complete and accurate synopsis of Dr. Triana's observations during this one particular examination.

The ALJ faults Dr. Triana's opinion because there was "no objective medical evidence in the file around the time [his] opinion was given;" however, Dr. Triana supplied treatment notes from March 2010 through December 2013. (T. 276-340, 401-435.) Around the time of Dr. Triana's October 2013 medical source statement, Plaintiff sought treatment from Dr. Triana twice in July of 2013, once in September of 2013, and

---

[2] The ALJ cites to a "December 2011" examination note in Exhibit 17F. There is no treatment note from December of 2011 in Exhibit 17F. The ALJ may have inadvertently read the treatment note from January 17, 2012, which indicated Plaintiff's last exam was December 28, 2011, as having been conducted in December of 2011. (T. 398.)

once in October 2013. (T. 416, 419, 422, 425.) Therefore, there were objective medical observations in the record at the time Dr. Triana provided his opinion.

Defendant argues the ALJ properly weighed Dr. Triana's opinion because it was internally inconsistent and not supported by his own treatment notes. (Dkt. No. 22 at 13 [Def.'s Mem. of Law].) However, the ALJ did not discuss Dr. Triana's opinion beyond the objective medical evidence and this Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the [ALJ's] decision itself." *Martinbeault v. Astrue*, 2009 WL 5030789, *5 (N.D.N.Y. Dec. 14, 2009) (citing *Grogan v. Barnhart,* 399 F.3d 1257, 1263 (10th Cir. 2005)); *see also Snell,* 177 F.3d 134 (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962)); *see also Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999).

To be sure, the Defendant is correct in her assertion that Dr. Triana's medical opinion appears to be inconsistent on its face. (Dkt. No. 22 at 13 [Def.'s Mem. of Law].) Dr. Triana opined Plaintiff could frequently lift and/or carry twenty pounds; however, Plaintiff could only occasionally lift and/or carry less than ten pounds. (T. 392.) This is precisely the type of inconsistency which the ALJ should address on remand, and further, the ALJ should re-contact Dr. Triana and request that he clarify his medical source statement. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

Defendant also argues the ALJ's overall physical RFC was supported by substantial evidence, namely the opinions of consultative examiner Richard Weiskopf, M.D. (Dkt. No. 22 at 10-12 [Def.'s Mem. of Law].) This Court cannot determine whether substantial evidence supported the ALJ's RFC determination, because there is a

11

"reasonable basis for doubt" as to whether correct legal principles were applied; therefore, the substantial evidence standard may not be used to uphold the ALJ's decision. *Rockwood,* 614 F. Supp. 2d at 280. Further, the ALJ reasoned Dr. Weiskopf based his opinion on his examination and "objective tests." (T. 20.) Dr. Weiskopf did examine Plaintiff on one occasion; however, Dr. Weiskopf did not review Plaintiff's medical imaging nor did he request imaging. (T. 352.) Dr. Weiskopf stated that Plaintiff indicated his MRI showed degenerative disk disease, not that he reviewed the MRI himself. (T. 349.) Defendant's claim that Plaintiff's legal argument was made in an attempt to couch a substantial evidence argument is without merit. (Dkt. No. 22 at 14 [Def.'s Mem. of Law].) For the reasons stated herein, Plaintiff correctly asserted that the ALJ failed to apply the proper legal standards in evaluating Dr. Triana's opinion.

In addition, even if the ALJ had properly evaluated the objective medical evidence in the record in her evaluation of Dr. Triana's opinion, the ALJ still failed to provide an analysis of his opinion under the remaining factors outlined in the Regulations. To be sure, courts require "no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *See Halloran v. Barnhart,* 362 F.3d 28, 31–32 (2d Cir. 2004). However, here, the ALJ provided no discussion or analysis beyond her conclusion the opinion was not supported by "objective medical evidence." Therefore, remand is recommended for a proper evaluation of Dr. Triana's decision.

  ii.) Consultative Examiner, Christina Caldwell, Psy.D.

Dr. Caldwell examined Plaintiff on February 17, 2012 for a psychiatric evaluation. (T. 344-348.) Dr. Caldwell observed that Plaintiff was cooperative, well groomed, and

made appropriate eye contact. (T. 345.) Dr. Caldwell observed Plaintiff's thought process was coherent and goal directed, with no evidence of hallucinations, delusions, or paranoia. (*Id.*) She noted his affect was depressed. (*Id.*) Dr. Caldwell observed Plaintiff's attention and concentration was mildly impaired due to intellectual functioning; his recent and remote memory skills were mildly impaired due to intellectual functioning; his intellectual functioning was average to below average; his general fund of knowledge was "somewhat limited;" and his insight was "fair to poor" and his judgment was fair. (T. 346.)

In a medical source statement Dr. Caldwell opined that Plaintiff could follow and understand simple directions and instructions. (T. 346.) She further opined Plaintiff was limited in his ability to perform simple tasks independently; maintain attention and concentration; maintain a regular schedule; learn new tasks; perform complex tasks independently; make appropriate decisions; relate adequately with others; and appropriately deal with stress. (T. 346-347.)

The ALJ afforded "significant weight" to Dr. Cadwell's medical opinion that Plaintiff could follow and understand simple directions and instructions. (T. 20.) The ALJ afforded "little weight" to the remaining medical opinion, reasoning it was based on subjective complaints and the opinion was "vague." (*Id.*)

Plaintiff argues the ALJ erred in her evaluation of Dr. Caldwell's opinion because the ALJ selectively picked and chose only parts of the medical opinion. (Dkt. No. 14 at 15-17 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ substituted his own judgement for that of Dr. Caldwell and the ALJ had a duty to re-contact Dr. Caldwell for clarification. (*Id.* at 16.) Defendant counters that the ALJ properly assessed the opinion

of Dr. Caldwell, because an ALJ may reject portions of a medical opinion which are not supported by the record. (Dkt. No. 22 at 10 [Def.'s Mem. of Law].) To be sure, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). However, the ALJ's reasoning for affording Dr. Caldwell's opinion weight fails because the ALJ's analysis is flawed.

Here, the ALJ provided a thorough discussion of Dr. Caldwell's medical opinion. However, the ALJ's conclusion that Dr. Caldwell's opinion of Plaintiff's ability to follow and understand simple directions and instruction, was supported by the "majority of the objective medical evidence" was conclusory. The medical evidence in the record regarding Plaintiff's mental impairment was sparse. The medical record did not contain treatment notes for mental health providers. The treatment notes from Dr. Triana which mention anxiety clearly state that Plaintiff's anxiety was linked to complaints of erectile dysfunction. (T. 292, 302, 328, 404, 425, 428.) As stated, Dr. Caldwell's opinion was the only medical opinion in the record regarding Plaintiff's mental functional limitations. The opinion of Dr. Reddy, who did not personally examine Plaintiff, was based on Dr. Caldwell's examination and opinion. (T. 369.) However, this Court is unable to decipher from the ALJ's decision what objective medical evidence the ALJ was referring

14

to in making her weight determination. Since remand is recommended for a proper analysis of Dr. Triana's opinion, this Court recommends that the ALJ provide a proper evaluation of Dr. Caldwell's opinion as well.

### B. Credibility

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and

> aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Plaintiff argues the ALJ erred in her evaluation of Plaintiff's daily activities in her credibility analysis; and further, the ALJ erred in her determination that objective findings failed to support Plaintiff's allegations. (Dkt. No. 14 at 17-19 [Pl.'s Mem. of Law].) Defendant argues the ALJ's credibility analysis was supported by substantial evidence. (Dkt. No. 22 at 15-17 [Def.'s Mem. of Law].)

Remand is recommended for a proper evaluation of the medical opinion evidence in the record. Therefore, remand is also recommended for a new credibility analysis based on a proper evaluation of the medical opinion evidence in the record.

### C. Step Five Determination

Plaintiff argues the ALJ's step five determination was not supported by substantial evidence. (Dkt. No. 14 at 19 [Pl.'s Mem. of Law].) For the reasons stated in Part IV.A-B, remand is recommended for a proper evaluation of medical evidence and Plaintiff's credibility, therefore, remand is also recommended for a proper step five evaluation.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Plaintiff's motion for judgment on the pleadings be **GRANTED**, and the Commissioner's determination be **DENIED,** and the matter be **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g) and consistent with this report**.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 11, 2015

_____
William B. Mitchell Carter
U.S. Magistrate Judge